**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **DAVID SCHWARK, et. al.,** | ) | **CASE NO. 1:04CV1324** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Judge John M. Manos** |
| | ) | |
| **TOTAL VINYL PRODUCTS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | **MEMORANDUM OF OPINION** |

On June 09, 2004, David Schwark, Scott Schwark, and Sylvia Schwark (collectively, the "Plaintiffs") filed the above-captioned case in the Cuyahoga County Court of Common Pleas. (Docket No. 1-2.) The complaint alleges products liability and loss of consortium claims against Total Vinyl Products, Inc. ("TVP"), all arising out of an accident that occurred when David Schwark dove into an in-ground swimming pool and struck his head, leaving him a permanent quadriplegic.[1]

On July 14, 2004, TVP invoked this Court's diversity jurisdiction and removed this action to federal court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (Docket No. 1-1.)

---

[1] On February 10, 2006, Defendant National Spa and Pool Institute and Third-Party Plaintiffs Mark and Mary Katanik were dismissed. (Docket Nos. 114, 115)

On January 17, 2006, TVP filed a motion for summary judgment. (Docket No. 112.) On February 16, 2006, Plaintiffs filed a brief in opposition. (Docket No. 120.) On February 27, 2006, TVP filed a reply. (Docket No. 122.)

All issues have been full-briefed and are ripe for adjudication. For the following reasons, the motion for summary judgment (Docket No. 112) is **GRANTED**.

## I. FACTUAL BACKGROUND

The facts of this case are indeed tragic. On June 10, 2002, 17 year-old David Schwark was invited to the residence of Mark and Mary Katanik located in Parma, Ohio. (Docket No. 1-2 "Compl.," at ¶1.) While at the Katanik residence, Schwark and several of his friends were using the in-ground pool. Id. at ¶2. While attempting a one-and-a-half forward dive from the diving board, Schwark struck his head on the transition wall separating the deep and shallow ends of the pool. Id. As a result of the accident, he was rendered a permanent quadriplegic. Id.

The in-ground pool and diving board were installed in 1970 by the original property owners. (Defendant's Ex. A "Biller Depo.," at 4.) The pool was a standard hopper-bottom design, three feet deep at the shallow end and eight feet deep at the deep end, with a transition wall dividing the two ends. (Defendant's Ex. B "Katanik 07/29/03 Depo.," at 31.) It is undisputed that the pool in question is unsafe for use with diving equipment. (Plaintiffs' Ex. F "Preliminary Report," at 6.)

Mary and Mark Katanik purchased the home in 1987. (Defendant's Ex. C. "Katanik 09/30/05 Depo., at 5.) On October 10, 1995, they purchased a replacement liner for the pool. Id. at 9-12. Mr. Katanik measured the pool and filled out a grid sheet provided by the catalogue distributor, In The Swim. Id. He installed the replacement liner in May of 1996. Id. at 14.

TVP manufactured the replacement liner according to the specifications and dimensions provided by Mr. Katanik. (Defendant's Ex. D "Geyman Depo.," at 9, 11-13.) There is no evidence that TVP was aware that the pool was equipped with diving equipment. (Katanik 09/30/05 Depo., at 62-63.)

Prior to April of 1995, all vinyl liners manufactured by TVP came in a packet that included the following materials:

(1) TVP packet contents sheet;
(2) vinyl liner installation instructions;
(3) Canadian General Tower Pool maintenance instruction sheet;
(4) TVP liner warranty card; and
(5) red and white "NO DIVING" stickers.

(Defendant's Ex. H, at 3.)

After April of 1995, the packet also included a set of National Spa and Pool Institute ("NSPI") Pool Type One Diving Envelop Instructions, which would have indicated that the pool in question was unsafe for use with diving equipment. (Defendant's Ex E, at 2.) Mr. Katanik disputes that the he received any such warnings with his replacement liner. (Katanik 09/30/05 Depo., at 19-20; Katanik 07/29/03 Depo., at 13.)

In 2000, the Kataniks purchased two "NO DIVING" stickers and placed them on the diving board. (Katanik 09/30/05 Depo., at 40.) They also implemented a house rule that prohibited diving head first. Id. at 15-16. Joshuah Janosik, who was present the day of the accident, stated that he and the other boys were warned about the transition wall and not to dive out too far. (Defendant's Ex. J "Janosik Depo.," at 13-14.) However, Schwark and two other boys deny receiving any such warnings. (Defendant's Ex. I "Schwark Depo.," at 60; Plaintiffs' Exs. H-J.) They also deny seeing "NO DIVING" stickers on the diving board. Id.

## II.  LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The party moving for summary judgment has the initial burden to either (1) present affirmative evidence negating an element of the non-movant's claim or (2) demonstrate "an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once that burden is met, the non-movant must set forth sufficient evidence to create a genuine issue of material fact. Klepper v. First Am. Bank, 916 F.2d 337, 342 (6th Cir. 1990). To avoid summary judgment, the non-movant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

All reasonable factual inferences must be drawn in favor of the non-movant. Humenny v. Genex Corp., 390 F.3d 901, 904 (6th Cir. 2004) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). However, "the mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Indeed, "[a] mere scintilla of evidence is insufficient; rather there must be evidence on which the jury could reasonably find for the non-movant." Humenny, 390 F.3d at 904 (internal quotation omitted).

## III.  LEGAL ANALYSIS

Plaintiffs argue that TVP is liable under O.R.C. § 2307.76 and Ohio common law for not

providing adequate warnings regarding the use of diving equipment with the replacement pool liner. TVP responds that it had no such duty. The question of whether a manufacturer has a duty to warn is a question of law. See Mussivand v. David, 45 Ohio St.3d 314, 318 (1989).

Ohio Revised Code, Section 2307.76(A) governs statutory liability for product defects due to inadequate warnings or instructions and states in pertinent part:

> (A) Subject to divisions (B) and (C) of this section, a product is defective due to inadequate warning or instruction if either of the following applies:
>
>> (1) It is defective due to inadequate warning or instruction at the time of marketing if, when it left the control of its manufacturer, both of the following applied:
>>
>>> (a) The manufacturer knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm for which the claimant seeks to recover compensatory damages;
>>>
>>> (b) The manufacturer failed to provide the warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type for which the claimant seeks to recover compensatory damages and in light of the likely seriousness of that harm.

Under Ohio common law, which survives the enactment of O.R.C. § 2307.76, a plaintiff can also recover under a "failure-to-warn" theory by establishing that "the manufacturer knew or should have known, in the exercise of reasonable care, of the risk or hazard about which it failed to warn and that the manufacturer failed to take precautions that a reasonable person would take in presenting the product to the public." Cincinnati v. Beretta U.S.A. Corp., 95 Ohio St. 3d 416, 425 (2002). Here, Plaintiffs argue that TVP is liable under both statutory and common law.

-5-

Ohio has adopted the component part manufacturer rule in "failure to warn" cases. According to the rule, "[t]here is no duty to warn extending to the speculative anticipation of how manufactured components, not in and of themselves dangerous or defective, can become potentially dangerous dependent upon their integration into a unit designed and assembled by another." Brennanman v. R.M.I. Co., 70 Ohio St. 3d 460, 467 (1994) (quoting Temple v. Wean United, Inc., 50 Ohio St. 2d 317, 324 (1977)). Indeed, under Ohio law, component part manufacturers are "not required to procure plans of the entire system, review those plans, and independently determine whether their respective component parts would function in a safe fashion." Searls v. Doe, 29 Ohio App. 3d 309, 311-12 (10th App. Dist. 1986). Thus, such manufacturers are not liable unless (1) the component part itself is defective, or (2) the manufacturer substantially participated in the integration of the component part into the system and the component part proximately caused injury to the plaintiff. Webb v. S.R.S. Liquidation Co., Inc., 92 Fed. Appx. 249, 251-52 (6th Cir. Mar. 08, 2004) (unpublished). As the Sixth Circuit recognized, to hold otherwise would be to encourage ignorance on the part of component part manufacturers, or alternatively, require them to retain an expert to determine the safety of the final integrated product. Childress v. Gresen Mfg. Co., 888 F.2d 45, 49 (6th Cir. 1989).

The rule even applies to cases in which the component part was manufactured according to specifications. Searls, 29 Ohio App. 3d at 311-12; ACME Steak Co., Inc. v. Great Lakes Mechanical Co., 2000 Ohio 2566, 2000 Ohio App. LEXIS 4578, *8 (7th App. Dist 2000).

The Court agrees that the component part manufacturer rule applies in this case. Under Ohio law, manufacturers simply have no duty to speculate how their products, not in and of themselves dangerous, may become potentially dangerous once integrated into the final product.

-6-

Brennanman, 70 Ohio St. 3d at 467; Temple, 50 Ohio St. 2d at 324. Indeed, the theory espoused by Plaintiffs would require TVP not only to anticipate the risks associated with the final product (the pool), but also anticipate that an additional component part not manufactured by TVP (the diving board) was added to the pool and then provide warnings regarding the additional risks associated with the use of the diving board. Ohio law requires no such duty.

Plaintiffs argue that the component part manufacturer rule is inapplicable because the pool liner itself was defective. It is true that the rule does not apply when the component part itself is defective. See Webb, 92 Fed. Appx. at 251-52. However, Plaintiffs do not take issue with how the pool liner functioned. They argue that it was defective because it lacked adequate warnings regarding the use of a diving board on this particular pool. Under Ohio law however, the defect-exception to the component part manufacturer rule only applies to defects in the component part itself, not defects relating to other component parts. See e.g. Holliday v. Ford Motor Co., 2006 Ohio 284, 2006 Ohio App. LEXIS 257, *22 (8th App. Dist. 2006) (holding that the manufacturer was entitled to summary judgment under the component part manufacturer rule because there was no defect in the component part itself).

A good illustration of this point comes from Roberts v. Performance Site Mgmt., Inc., 2004 Ohio 2820, 2004 Ohio App. LEXIS 2470 (10th App. Dist. 2004). In Roberts, the plaintiff's husband was killed while using an excavator, which was equipped with a coupler system that allowed the operator to change attachments quickly. Id. at *2. One attachment disengaged, killing the plaintiff's husband. Id. at *3. In filing suit, the plaintiff alleged that although the excavator was not defective without the coupler system, once integrated, the final product became defective. Thus, according to the plaintiff, the manufacturer had a duty to warn about

the risks associated with the final integrated product because (1) it was aware of the risks involved (having been sued before), and (2) it marketed the sale and use of the coupler system with the excavator. Id. at *11-12. The trial court granted summary judgment in favor of the manufacturer and the appellate court affirmed. Applying the component part manufacturer rule, the appellate court first noted that the alleged defect was in the coupler system, not the excavator. The court then concluded that because the manufacturer of the excavator did not participate in the design of the coupler system, nor did it assemble the final integrated product, it had no duty to warn of the dangers associated with it. Id. at *14.

Here, the pool liner, like the excavator in Roberts, was not defective. Both products functioned in the manner for which they were designed. In Roberts, the danger arose from placing another component part, the coupler system, onto the excavator. Likewise, here, the danger arose from placing another component part, the diving board, onto a pool unsafe for use with diving equipment. TVP, like the manufacturer in Roberts, had no duty to warn about the potential risks associated with the final integrated product, especially when there is no evidence that TVP had knowledge that a diving board had been placed onto the Katanik pool. Indeed, in those Ohio cases in which the defect-exception to the component part manufacturer rule applied, the component part itself was functionally defective. See e.g. Phan v. Presrite Corp., 100 Ohio App. 3d 195 (8th App. Dist. 1994) (plaintiff accidentally stepped on unguarded foot switch and injured hand in power press); Anderson v. Olmsted Util. Equip., Inc., 1990 Ohio App. LEXIS 1238 (11th App. Dist. Mar. 30, 1990) (cylinder tube ruptured causing injury to plaintiffs ); Runyon v. Briggs & Stratton Corp., 1989 Ohio App. LEXIS 1689 (2d App. Dist. May 05, 1989) (engine's kill switch tended to fall off when installed into auger and injured plaintiff).

Plaintiffs rely heavily upon Fleck v. KDI Sylvan Pools, Inc., 981 F.2d 107 (3d Cir. 1992). In Fleck, the Third Circuit held that because a pool liner was sold in a defective condition (lack of warning labels), the component part manufacturer rule did not apply. Id. at 118-19. However, Fleck is distinguishable. First, the pool liner in Fleck not only lacked warnings; it also lacked depth markers. Id. at 111-12. As a result, the pool looked twelve feet deep when in reality, it was only four feet deep. Id. at 112. Thus, the pool liner in Fleck was functionally defective. No such defect is alleged in the instant case.[2]

Second, the Third Circuit in Fleck concluded that pool liner manufacturers should be held responsible for affixing warning labels regarding the dangers of diving in general. Here, the Plaintiffs set forth a very different argument. They argue that TVP should have anticipated that the Kataniks might install a diving board onto a pool unsafe for use with diving equipment and provide warnings about the risks associated with the use of that equipment. The Third Circuit in Fleck simply did not address that issue.

Finally, the most persuasive rationale for the Fleck decision is inapplicable to the instant case. Fleck relied heavily upon public policy:

> Even if we assume that the pool here was manufactured with warnings, it is foreseeable that the pool liner will be replaced some day. If the manufacturer fails to affix warnings, as here, the pool becomes defective and dangerous. Someone must bear the risk of injury. To shift the burden to the manufacturer of the pool, the "finished" product, is unreasonable because it manufactured and sold a safe pool.
>
> Since one can foresee that the liner can create a danger from its inherent condition, the risk should fall on the manufacturer of the liner and not the pool manufacturer. Fairness, economic sense, and policies underpinning strict liability demand this result.

---

[2]   In fact, here, Schwark personally checked the depth of the Katanik pool and believed that it was deep enough to dive. (Schwark Depo., at 141-42.)

Id. at 118-19. Thus, in Fleck, there were only two manufacturers at issue, the pool manufacturer and the replacement liner manufacturer. The latter was held responsible because it was not only in the best position to prevent the risk of injury, it was also in the only position to do so. Here, the danger arose from placing a diving board onto a pool unsafe for use with diving equipment. Thus, the instant case involved an additional manufacturer. Certainly, the diving board manufacturer is in the best position to prevent the risk of injury arising out of the use of its own product. Moreover, the manufacturer of the pool is in a much better position than TVP to determine whether the pool itself is safe for use with diving equipment. See also Crossfields v. Quality Control Equip. Co., 1 F.3d 701, 704 (8th Cir. 1993) (holding that the primary duty was on the manufacturer of the final integrated product, not the manufacture of the non-defective component part). Thus, the most persuasive rationale for rejecting the component part manufacturer rule in Fleck does not apply to the instant case.[3]

---

[3]   In Fleck, the Third Circuit also argued that the component part manufacturer rule does not apply to replacement pool liners because they are specific products with a specific purpose. 981 F.2d at 118. This is a dubious distinction. Many component parts have a specific purpose. In fact, under Ohio law, the component part manufacturer rule applies even when the component part is designed according to specifications. Searls, 29 Ohio App. 3d at 311-12. In comparing pool liners to things like elevators and brake systems, the Third Circuit also noted that the component part manufacturer rule does not always apply to products that are incorporated into something else. Fleck, 981 F.2d at 118. However, it is unlikely that one would expect an elevator manufacturer to provide warnings regarding the use of other component parts added to a building or a brake system manufacturer to provide warnings regarding the general operation of a motor vehicle. In fact, the only case cited in Fleck to support this proposition is Walton v. Avco Corp., 530 Pa. 568 (1992). However, Walton does not stand for this proposition. Indeed, the reason the component part manufacturer in Walton had a duty to warn was because the component part in question (a helicopter engine) was defective and caused a helicopter to crash. Id. at 571-73.

Given these critical distinctions, the Court concludes that the reasons for rejecting the component part manufacturer rule in Fleck are simply inapplicable to the instant case.

In short, the Katanik pool was dangerous notwithstanding the pool liner because of the existence of the diving board. However, because the pool liner itself was not defective and because Plaintiffs do not allege that TVP assembled the final integrated product, the component part manufacturer rule applies and no duty to warn existed. Webb, 92 Fed. Appx. at 251-52. This is especially true given that TVP did not know, nor should it have known, that a diving board had been placed onto the Katanik pool.[4]

## IV. CONCLUSION

For the foregoing reasons, the motion for summary judgment (Docket No. 112) is **GRANTED**. Each party to bear its own costs.

**IT IS SO ORDERED.**

**Date: April 10, 2006**              */s/ John M. Manos*
                                      **UNITED STATES DISTRICT JUDGE**

---

[4]     Plaintiffs also note that the industry standard was to provide warnings about the use of diving equipment. However, industry standards cannot override the component part manufacturer rule. As the Ohio Supreme Court stated, "[t]here is no duty to warn extending to the speculative anticipation of how manufactured components, not in and of themselves dangerous or defective, can become potentially dangerous dependent upon their integration into a unit designed and assembled by another." Brennanman, 70 Ohio St. 3d at 467 (emphasis added).